All right, thank you. The next case on the argument calendar is Stilaguamish Tribe of Indians v. Upper Skagit Indian Tribe in Lume, Indian Nation. And I apologize if I have mispronounced any of the party names. My understanding is, before we start, that the Applees are going to be splitting their time ten minutes each. Am I correct? So just for your information, the clock will be your ten minutes and will not count down from twenty for each of you. It'll count down for ten. And when it reaches zero, your time will be done. Whenever you're ready, counsel. Good morning, Your Honors. May it please the Court. Robert Roy Smith with Kilpatrick on behalf of the Stilaguamish Tribe of Indians. With me at counsel table is Stilaguamish Tribal Attorney Raven Arroway-Healing. And I would like to reserve five minutes for rebuttal. Your Honor, Stilaguamish is back before this Court for the second time in two years because the District Court chose to ignore the prior panel's clear remand instruction to evaluate all of Stilaguamish's evidence, whether it had been considered in other contexts or not, and to make further factual findings as to the tribe's evidence of village presence and fishing activities in the claimed waters. In response, the District Court stated that he was acutely familiar with the 50-year history of this case and that there was no need for him to issue line-by-line conclusions of law for each Stilaguamish village. Is there anything in the prior panel's order which ordered the District Court to do something contrary to what the District Court said and what you just read that would literally order him to do something to address things line-by-line? The exact instruction from the District Court was to make further factual findings. And the District Court – I may have these numbers wrong, but my recollection is the original order was like six pages and the second order was like 12 pages? That's right. So at least literally the District Court complied by making additional factual findings? There are additional factual findings, Your Honor, but the District Court still misapplied the law of the case to Stilaguamish's evidence that supports their fishing activities. Well, the problem there is that the prior panel decision says the District Court correctly applied the law of the case. And so how is it the prior panel's decision required the District Court to change its application when the prior panel said it did it right? Well, the prior panel said that the District Court did it right as to that first order. The prior panel vacated that order. The District Court issued an amended order with new findings. And in particular, the District Court's recitation of the law of the case as to village evidence was just plain wrong and inconsistent with the law of the case. So, counsel, this doesn't go directly to what you just said, but more to follow up with Judge Clifton's question. So the District Court said, I'm sorry, the prior panel said the District Court correctly applied the law of the case. And then we conclude that the District Court correctly applied the controlling law of the United States versus Washington. Those two statements actually become law of the case, yes? I would say no, Your Honor. Why don't you tell me how it wouldn't be law of the case and binding on the District Court when the appellate court made those two very clear statements? Well, the appellate court made those clear statements with respect to an order that it then vacated and remanded back to the District Court. That doesn't vacate the prior panel's order, which said it was right. It doesn't. So we've got to disconnect here. Well, no, but the fact that he may have been right on the law the first time doesn't mean he was right on the law this time. No, that may well be true, but my question was the circuit courts, our court's statements, the District Court correctly applied the law of the case the first time, and the District Court correctly applied the controlling law of the United States versus Washington the first time to become law of the case, yes? Yes. All right. Thank you. It does. What is the legal error that you're claiming? I'm looking at the second page of the amended order in which the court says the only legal issue at trial was whether historical evidence and expert testimony and all reasonable inferences drawn therefrom, demonstrated by a preponderance of the evidence that still a Guamish customarily fished the claimed waters, et cetera, at and before treaty times. Do you agree with that as being the legal issue that was at stake? I agree that that is the correct restatement as to what it takes for a tribe to prove usual and accustomed fishing. And was that the issue that was at stake on remand? That was ultimately the issue at trial. Where the District Court erred in its amended order significantly was first in restating how village and presence evidence is applied to the facts. So as I indicated, the District Court in the amended order says the presence of villages without moor does not go to the ultimate issue before the court. That's not the law of the case, and it never has been. Village evidence and evidence of presence, which would be seasonal encampments or other seasonal use, has always been enough without additional evidence. Let me read from the first panel decision. Although the District Court has previously inferred fishing from evidence of villages' travel and presence, such evidence has never been treated as determinative of UNAs in the face of contradictory evidence. And so I'm not reading from the first panel decision a statement that where the District Court entered its second order, it went badly astray. Well, but it's not – there was no – again, that statement from the prior panel is reciting the law of the case. I mean, that is a true statement. So is it your position then that without contrary evidence, the village and presence evidence does suffice? Yes, and that has always been the law of the case since 1978. I'm sorry. Go ahead. The first panel goes on to say inferences made by the District Court in past subproceedings do not necessarily bind the court to come to the same legal conclusions in others where the evidence is more equivocal. So it's more than contradictory evidence. It's the strength of the inference evidence. And I don't see how the District Court's second order, the one that's before us now, stepped away from that. So tell us where it stepped away from that. Well, here's how it did so. So with respect to village and presence evidence and making presumptions that the tribe fished in those waters adjacent to those villages, that has been the law of the case since 1978 and was affirmed by this court in 1981. Well, in at least some instances. But the fact that eyewitness testimony may be sufficient in some cases doesn't mean it's got to be accepted as sufficient in every case. In this case, you have some evidence, and the District Court looked at it and decided it wasn't sufficient to prove what had to be proven. Well, but that's another error by the District Court here. The same standard that applied to tribes who were seeking use on accustomed fishing areas in the 70s, 80s, and 90s needs to apply to Stillaguamish now. The District Court has long recognized, and this court has recognized, that there's scant evidence from 1855 to show fishing, and that's particularly true as to marine waters. So, counsel, first, the expert witness whose last name is F-R-I-D-A-Y, how do you pronounce that? Dr. Friday. Okay. So, for example, the District Court, and this is just one example on page 5 of his second order, is discussing Dr. Friday, and he says, Dr. Friday essentially speculated that Stillaguamish must have been broadly fished, must have broadly fished in all the claimed marine waters in a means or fashion similar to other Coast Salish tribes without any direct evidence or sufficient indirect evidence or any reasonable inference to support that assertion. I mean, isn't that, even if other triers of fact might decide differently, isn't the District Court essentially doing what the prior panel has required the District Court to do, is look at inferences to be drawn from the evidence and decide what was reasonable and what wasn't? And again, I'm just giving this as one example. Yeah. Well, one of the things that the panel instructed the District Court to do was to consider all of the tribe's evidence, including whether it had been introduced in other context or not. And that seems to be where the District Court gets stuck here and declares that all of Stillaguamish's expert testimony is somehow speculative. But the prior panel acknowledged that part of this case is experts relying on the expert work that had come before it. And if you think about what speculative testimony is, right, it's testimony that lacks a factual basis or a reliable methodology. And that's not the case here. What we're talking about, and I think this is a great example of where the District Court went astray, Dr. Barbara Lane, who has always been considered a highly credible expert in U.S. v. Washington, and this Court has relied on her work to find probable locations of usual and custom fishing areas as recently as 2015. The District Court said that her work was speculative and was mere speculative whispers. Was that reference to her work generally or to a particular instance where something from her, I think it was a letter, was offered up? Both, both. So as to that letter, right, it was a private letter that Dr. Lane had written in the 80s where she said it would be inconceivable that Stillaguamish would have villages on Port Susan and not also fish in those waters. That letter was admitted into evidence, and Dr. Lane is no stranger to this case, right? She has been intimately involved in this litigation from the beginning until her death a couple of years ago. She's not been with us for the last several years and doesn't appear to have been subject to cross-examination as to what that statement means in the context of this case. Not as to that letter. That may make a hearsay, although I would say there would be a hearsay exception for that, either present sense impression or sort of a learned treatise. Well, that's not a sense impression. That's an expert testimony. Nobody ever considers that a sense impression. Her letter might be, but it's not speculative. And Stillaguamish also, and Dr. Friday relied upon, so Stillaguamish offered evidence before the district court at trial from Dr. Lane under oath where she said that Stillaguamish had villages along the saltwater in Port Susan and that Stillaguamish fished those waters. That's not speculation, but that's what the district court, that's how the district court construed her testimony and also the testimony of all of the other of Stillaguamish's witnesses, expert witnesses. And I would say, Your Honor, is that if this expert testimony that Stillaguamish introduced at trial is speculative, then the expert testimony for the prior 50 years of this case has all been speculative, too. The same methodology was what was used here, where the expert went and looked at anthropological and historical evidence to draw his own conclusions. So, counsel, on the point you were talking about before, where we're talking about Dr. Lane and also the Dorsey affidavit, the district court said that even if other expert witnesses had relied on this affidavit before to evaluate Stillaguamish treaty time marine fishing activities, which would include Dr. Lane in her 74 private letter, the affidavit does not address marine fishing or support any reasonable inference of marine fishing. Is that an incorrect factual statement? That's pages 6 and 7 of the second order. It is not an incorrect factual statement. But we can even discount that letter, Your Honor. If that was the single piece of evidence that Stillaguamish had for fishing in Port Susan, maybe that would be problematic, right? But it is not, right? Dr. Lane testified under oath in prior sub-proceedings. And this is at 8 ER 1455 to 56. Areas like Port Susan and areas close to the mouth of the Stillaguamish River, I think they were primarily fished by the Kikialis and Stillaguamish. There is also, and that's, again, that was under oath in prior sub-proceedings. Well, what I'm looking at is I would say, generally speaking, the areas you have mentioned except areas like Port Susan and areas close to the mouth of the Stillaguamish River, I think they were primarily fished by and then mentioned, I apologize for the mispronunciation, Kikialis and Stillaguamish. But that's pretty loose testimony there, isn't it, on 1456? Well, I would say, Your Honor, that it's consistent with Dr. Lane's testimony in other cases. So, for example, the Tulalip tribes obtained marine UNA in Port Susan based on an expert report that said that it was, quote, likely that they fished near a village in Hatsaloo. So the district court, until this case, has never let the absence of a perfect historical record stop it from finding that there was tribal fishing in the marine waters at and before treaty times. And, again, that's based on a recognition that there's a relaxed standard of proof that applies here, right, a relaxed preponderance. Well, what do you mean by relaxed? I mean, there's still a preponderance of the evidence standard. It is. It's still a preponderance. Just to have to accept the evidence may be sketchy on both sides, you've got to make what you can out of it. But that doesn't mean it has to be accepted as persuasive, that if the district court, as the trier of facts, decides it's not persuasive, why isn't that something that triers of fact do? Well, they can do if this case was taken in isolation. But it cannot be considered without recognition as to how this same type of evidence has been consistently treated by the district court since the first usual and accustomed case back in the 1970s. What the district court did here was shift that standard. It made the standard of proof higher for Stiligwamish. Somebody's brief referred to judicial fatigue, and I'm not sure it's, I mean, there is some level of fatigue, and particularly the district court judge who has to deal with it over and over and over again. Any of us who have been on the Ninth Circuit bench for a while has bound to have encountered some of these because there are so many of them and not as much as the district court has. But there's also, I think, some recognition with the passage of time. The evidence doesn't get any better. It gets that much sketchier. And if the body of evidence hasn't changed, and we're now 50 years after the first determination, it's hard to say that, well, if it wasn't asserted then, why should we decide that suddenly it's strong enough now to support a finding that nobody asked the court to make at the time then? I understand the 1974 decree carefully said you can ask to expand the area, but it's not like it's meant to be a wholesale, well, let's look at the old evidence and see what new claims we can bring out of that. If the evidence hadn't gotten any better, it appears, and your case seems to be based on reanalysis of what somebody said many years ago, I'm not sure it's unfair for a district court to say, it's just not persuasive enough in the circumstances that I'm trying to make this decision here. Why is that wrong? Your Honor, I would disagree with you because, one, I would reject the characterization of sort of like repackaging the evidence. What happened was, for example, that testimony that I read for you from Dr. Lane, that was testimony that was deduced from Tlalip in a different sub-proceeding, but she was talking about Stiligwamish fishing. It had never been presented in a case in chief for Stiligwamish, and you're right, the evidence hasn't changed arguably since 1855. Except that we can't ask her today about what she meant by some of those statements because she's not with us anymore. As to that particular letter, but other statements were made under oath, and I would just like also, it's not just Dr. Lane, right? There was also testimony that was introduced through Dr. Friday from other experts who also were less equivocal, Your Honor. Let me go back to something you said a couple of minutes ago where you were talking about Port Susan and Hat Slew. And so I'm looking at Dr. Walker's affidavit or declaration, and I know that you asked that it be struck on the grounds that it was a sham affidavit. The district court rejected that. But he reiterates his expert testimony in this affidavit with regard to regular fishing and the Port Susan area, and the district court relied on that, right? No, the district court found that Dr. Walker's testimony was speculative as well. Right. But, I mean, you had argued, correct me if I'm wrong, that Dr. Walker's deposition testimony supported strongly your case. Correct. And he walked it back, or he said it was misunderstood in the declaration, and then the district court said, taking into account the declaration, which I won't strike, that there's no there there. That is what the district court said. But, again, right, Dr. Snyder, another expert prior in this case, said unequivocally Port Susan was fished by Kikiyawas, Snohomish, and Stiligwamish. That's 7 ER 1443. Dr. Carol Riley said the Stiligwamish River Indians hunted up river but came down to Port Susan and lower Skagit Bay to fish and clam. That's at 7 ER 1341 and 1331 to 37. So we have to look at the evidence in a whole, right? You can henpeck the record and say, oh, well, you know, this letter, there wasn't cross-examination about it. Oh, well, Dr. Walker changed his mind. But there is other concrete testimony that shows that Stiligwamish was actually fishing these claimed waters. Or there was evidence in the record similar to that for other tribes that established a marine UNA for them. I would like to reserve the 47 seconds I have left. So, counsel, we've taken up a lot of your time with questions, and so you can prepare. We'll give you your full five minutes for rebuttal. Appreciate that, Your Honor. Thank you. You can adjust it. I can't tell you how to do it, but I've seen evidence that it can be done. The first time I argued in this court, the presiding judge actually had to interrupt argument to tell me to lower it because no one could see me or hear me. Okay, we can see you now. Take your time to get started. Okay. Thank you. Good morning, Your Honors, and may it please the Court. My name is Emily Haley from the Stiligwamish Indian Tribal Community, and I'm here to argue today on behalf of the appellees. I will address the sufficiency of the amended order and issues related to the law of the case and whether there was evidence that Stiligwamish customarily fished. My co-counsel, David Hawkins, will address the relevant standard of review, why the relief that Stiligwamish is seeking in this court is not available, and why Stiligwamish's claim to marine UNA failed, while others, in particular, Upper Skagit's, did not. And I'm going to apologize in advance because a lot of what I'm going to say is going to sound familiar. This court should affirm for two reasons. The first is what you said, Judge Bennett. The amended order's factual findings complied with the court's mandate, are not clearly erroneous, and are sufficient to supplement, I mean, are sufficient to support judgment on partial findings. Counsel, I had a question about paragraph 12 that begins on page 9 of the amended order. And in this paragraph, the court seems to dismiss the relevance of testimony from earlier years as being too old to be useful. But that made no sense to me in the context where we're looking at things that happened, you know, 200 years ago that I don't know why someone in 1973 wouldn't know just as much about 1800 as someone today. So I found that a very odd paragraph where he says these publications are several decades old and some of the submitted evidence predated the original Bolt decision. But to me, that doesn't, that's kind of a so what. So what am I to make of that paragraph? Thanks, Your Honor. I want to make sure that we're talking about the right paragraph. So if you can just... I'm looking at page 8 and 9 of the amended order, paragraph numbered 12, which begins on page 8 at line 25 and carries over to page 10, line, it looks like, 6, a little bit wonky. Okay, I'm with you now. I think that your question goes to the ultimate issue of whether new evidence needs to be submitted in cases like this where tribes come back much later than final decision one to try to establish UNA in new fishing areas. And I don't think the law on that question is settled. In Sillagamish 1, the panel said that the district court needed to consider all of the evidence regardless of when it was created or who created it. On the other hand, there's some force to the district court's argument that allowing people to constantly relitigate over the same pieces of evidence creates problems in terms of resources... But what's the logic? What's the logic of saying that old evidence about ancient times is less reliable or less probative than new evidence about even more ancient times? I mean, the logic escapes me. And I don't see him as giving the only... I just don't see the logic, I guess. And we may be reading it differently. As I read this paragraph, he is saying that one of the problems he finds with Dr. Friday's kind of reinterpretation of the evidence provided by earlier experts is that we have that evidence by earlier experts. And rather than relying on those experts' words, Dr. Friday has purported to reinterpret them, often changing them. Counsel, I tend to look at this paragraph perhaps more in the way that you're looking at, that I don't see the district court here as saying anything that happened before is irrelevant. I see the district court as saying, in the last sentence of that paragraph that you read, was he doesn't understand why we should give Dr. Friday's interpretation of prior things extra weight as opposed to looking at what was actually said. Yeah, I mean, it's not obviously the best evidence rule, but it's kind of similar, right? That if we have statements from Dr. Lane or we have a report from Dr. Lane, then we can look at what she said herself, not rely on what Dr. Friday thinks she said. And then it goes beyond that, that Dr. Friday was relying on evidence that Dr. Lane and others did not actually say in prior subproceedings when they were asked to testify under oath about the Stiligwamish in particular. Well, let me ask you, take a particular example, the one that your colleague pointed us to, which was a volume made of the excerpts 14, 56. And somebody, I think it was Dr. Lane, but actually I don't have the first page here, so I'm not 100% sure, is talking as an anthropologist and offers an opinion, apparently in a case not directly involving the current applicant. And I confess I've lost track. Maybe it was, well, I'm not sure which tribe it was for. But there is discussion about how this area close to the mouth of the Stiligwamish River, I think they were primarily fished by Kiki Ellis and Stiligwamish. So there's that statement, and then there's some examination including, do you know what the Indian meaning of the word is, river people and so forth? We just have the one page, but there does appear to be some examination at the time of what this witness was saying, which did offer an opinion. So as I understand, you're saying it's fair game, and the district court appropriately considered this evidence. What it decided not to consider was Dr. Friday's take on this evidence. Is that the distinction you're drawing? I think that that is correct. He does both, right? In finding of fact five, he's talking about why he concludes that Dr. Friday's take on things is not, is basically speculative because it's not grounded in any probative evidence of the assumption he's making, which is that the Stiligwamish tribe acted in the same manner as its coastal neighbors. Separately, I think in the paragraphs that we were just discussing with Judge Graber, he's making that other point that he can rely on the underlying statements of Lane without having them reinterpreted through Dr. Friday, is what they mean. So if we go back to this page 1456, there is an opinion expressed here, I guess by Dr. Lane, that this particular area close to the mouth of the river was primarily fished by the two groups she identified. So as I understand it, you're telling us the district court didn't reject that because it was Dr. Friday's gloss, just decided it wasn't sufficiently persuasive by itself, and the standard of being applied by the district court here was unless there was evidence of actual fishing, and this he concluded wasn't enough to get to that point. Yeah, I think that's exactly right, Your Honor. And, you know, Stiligwamish talks a lot about context, but a really important piece of context here is that Barbara Lane wrote an entire report in Final Decision I, where she extensively researched the territory and fishing practices of the Stiligwamish tribe at treaty time, and that report concluded that they lived on the river, that they fished on the river, that they didn't need to leave the river because the river provided all of their needs. Stiligwamish does not talk about that at all. It instead relies on these statements that were made in a personal letter. This was testimony, but testimony in the context of a claim being brought by a different tribe. Right, and I think that what Judge Martinez is saying about it is that he finds that to be speculative because it wasn't something she testified about when she was testifying about the Stiligwamish in particular. She wasn't subject to cross-examination. She didn't come forward with the evidence underlying that opinion. She did not, you know, she did not explain, Stiligwamish did not explain, Dr. Friday did not explain why in 1974, or shortly before, Dr. Lane is writing a report saying that the Stiligwamish were isolated upriver Indians, and then in 1975, she's writing a letter to Dr. Getchie saying it's inconceivable that they wouldn't have fished in Port Susan when the evidence that she relies upon for that conclusion that they must have been fishing in Port Susan because of proximity was the same evidence available to her when she wrote a report, and then she actually appended to her report the two sites from the Dorsey Affidavit at Warren Beach and Hat Slough. Thank you. I want to just speak briefly. If you go through the district court's amended opinion and compare it to the evidence that the prior panel said that the district court needed to address, it lines up almost one for one, and in every instance, the judge is explaining, you told me that I needed to consider this. I considered it. This is why I found it to be speculative, or this is why I found it to be inconclusive, and so when you have a situation where you're substantially over your time, would you like to conclude? Oh, I'm sorry. I didn't realize. Yes, I would like to conclude. Thank you. No, I mean, if you have a concluding statement, you can make it. Yes, thank you. I just, you know, this case has been going on for 55 years. Stille Guamish has had many opportunities to meet its burden of proof to establish customary fishing. It has not been able to do that, and although Stille Guamish does have a right to fish where it has UNA, it has not established UNA in the claimed waters, so this court should affirm. Thank you. Thank you, and I apologize for being so far over on my time. No, it's fine, counsel. This is a complicated, important case, and we're all taking it seriously. Thank you. Thank you. May it please the court, David Hawkins, general counsel for the Upper Skagit Indian Tribe. With me today is Ariel Martinez, outside counsel for the tribe. So, counsel, if it's possible, if you could adjust the microphones just so we can hear you a little better. I'm sorry, Your Honor. My voice is a little hoarse. I've been regulating a fishery on the river, and so I've been yelling a lot lately. We're glad you stopped the yelling when you got here. This panel's review is strictly limited to whether Judge Martinez properly granted Upper Skagit's Rule 52C motion. The previous mandate explicitly affirmed that the district court properly applied the law of the case, but remanded for Judge Martinez to clarify the evidence he relied upon, its weight and interpretation, to reach his determination. This panel must determine if the district court's reformed order is clearly erroneous. To be clearly erroneous, this panel does not have to agree with the district court's finding, but it must determine that no reasonable person could have reached the same conclusion. You must find that the district court's decision was, one, illogical, two, implausible, or three, without support in inferences that may be drawn from the facts in the record. Still, Iguamish has failed to meet this burden, as the district court order complies with the panel's direction, specifically regarding the evidence it relied upon throughout its findings. As to the evidence regarding village sites, Ms. Haley recited how the district court in paragraph 10, subparagraphs A through I, properly considered and evaluated the evidence presented. I would like to amplify his finding as the 1975 Barbara Lane letter. Quote, ultimately, the words in this letter are no more than speculative whispers from 50 years ago. Judge Martinez did the work requested by the Ninth Circuit. As a fact finder, he considered all of the evidence when issuing his reformed order. Still, Iguamish ignores entirely the prior panel's limited order. It erroneously continues to challenge whether the district court applied the correct law of the case. But the Ninth Circuit unequivocally rejected the assignment of error in Still, Iguamish's first appeal, holding, we conclude, the district court applied the proper law of the case. Still, Iguamish also asks that this court not only reverse the district court's amended order, but to decide as a matter of law, without any citations, and under a de novo standard of review, that Still, Iguamish affirmatively has UNA in the claimed waters. That's not relief available to Still, Iguamish, even if the court were to find in its favor. First, the only issue before this panel is whether the evidence the district court relied upon warranted granting Upper Skagit's motion. Counsel, if we disagree with your position on that, what is the remedy that you think would be appropriate? Can you clarify your question? If we were to conclude either that the district court made a new error of law, not related to what we blessed the first time, or that one or more findings are clearly erroneous, what is the proper remedy? I know you don't agree that that occurred. I'm asking what would be. Understood, Your Honor. I think there are two remedies available to this court. You could remand for further consideration of the 52C motion and more findings, or you could remand and instruct Judge Martinez to consider the entire record in regards to the request for relief that Still, Iguamish provided in their underlying complaint. Counsel, I assume that your position would also be that if we found some factual error that the judge made in this Rule 52 proceeding that we'd have to find in order to reverse that it was harmful error, not just error, yes? Clear error is not harmful, Your Honor. It's the three points that I provided earlier. Implausible, illogical, or without support from the inferences that may be found in the record. So it's not about harm. It's about those three components, and whether or not you agree with it, as I stated previously, that's not the issue. The issue is whether or not a reasonable person and those three components of the tests have been met. But it would depend, I think, on what the error is. If the district court, for example, said that somebody promised an opening statement that they were going to put something in evidence, and then they never did, and that were just factually wrong, even if we were to find that it was factually wrong, in order to do something about it, we'd have to find that it made a difference, right? Oh, I think that's a fair statement, Your Honor, yes. So to go back to what Steele-Gwamish is asking this court to do here, which is truly remarkable, they had no motion pending before the trial court before this appeal. It never filed a motion. It didn't file a 52C or 52C motion of its own, and yet it's asking this court to take an affirmative step for which they have not procedurally made any complaint to accomplish. Second, and equally lacking any support in the record, Steele-Gwamish asked this court to massively expand its Q&A on a limited record submitted to this panel and ignore the extensive trial record that Upper Skagit and other tribes developed that demonstrates Steele-Gwamish has no evidence of actual fishing in the claimed waters. This panel was not the fact finder at trial, cannot step into the district court's shoes, and cannot make a factual decision regarding whether Steele-Gwamish has proved its Q&A based upon a partial record. What's the practical impact? As I mentioned before, this isn't the first time I've been to this party, and a lot of different groups have serious interests. A lot of money and time and effort have been expended on this over the past, indeed, now more than 50 years. Why? What is really at stake here? Let's just take this illustration. Suppose the Steele-Gwamish ultimately prevail, and I understand your argument about how they can't get to the result they seek through this particular appeal. But let's look at the big picture. Suppose they ultimately prevail. What happens? What changes? What's the impact on them and on everybody else? Your Honor, for Upper Skagit, its UNA is a very limited UNA. All of the waters that Steele-Gwamish is seeking to come into constitutes pretty much the entirety of Upper Skagit's UNA. The fleet size that they would introduce I can't speak to, but any incursion into that UNA will dramatically affect the take that Upper Skagit has available to its fishers. It's the same for Swinomish. It's the same for Tulalip. So it's not a small impact that's going to occur on the tribes. Fundamentally, it limits the most important component of the adjudicated treaty right, Upper Skagit's ability to take fish from its usual and custom grounds and stations where it has litigated and established its UNA. And on that point— He explains why we have the opposition from your client and the several others. That's absolutely right. And it's more than just fishing, Your Honor. It's the identity of who they are, where you fish, your village sites, the tribes' locations, the incursion into those territories. It's an attack on their identity as well. If I may, there's been talk about, you know, Steele-Gwamish having to meet a burden that no other tribe has had to meet here as it relates to villages and as it relates to having fishing associated with villages. Upper Skagit's the only tribe, the only riverine tribe, that has established marine water UNA, expanded from its original Final Decision I decision. They did that by specific examples of fishing at specific locations. I'd like to provide you with a few examples. For Saratoga Passage, this is Exhibit UPS 31 at page 20 from the Omsman Report. Quote, fish were caught and dried here and land hunting was carried out at this site. Mussels were collected and clams were dug. The Upper Skagit came here to get clams. Specific conduct of fishing at a specific location. The Upper Skagit- Do you contrast that with the evidence you say was not offered? No. Let me take one step further. And the panel of our court that dealt with this case previously, two of the judges or one judge authored a concurring opinion, another judge joined in that, the third judge said not so fast, pointing to is there another way to go about doing this because it is unusual to have a judicial proceeding that's gone as this one has. My question is not a direction, it's the prior panel's suggestion that perhaps starting in the district court, some attempts should be made to address whether there's a different way to resolve this other than having what I confess as a lawyer, I used to appreciate a full employment act because a lot of lawyers are kept busy by this. Has there been any effort in the district court to see if a different way, or perhaps through the state legislature, that can't be the state, that's the problem, in this district court to see if there's a different process whereby some of these claims can be resolved without requiring referral back to a now 51-year-old judicial decree? Your Honor, as I stated at the previous oral argument, the question as to whether or not the jurisdiction should continue under Paragraph 25 from Upper Skagit's perspective is undoubtedly it should. As long as the treaties are in effect and as long as there's resources related to those treaties, Paragraph 25 must stay in place giving jurisdiction to the tribe and the state to come before the courts to resolve these matters. That said, there have been efforts initiated by tribes, amongst the tribes, to do alternative dispute resolutions. There have been, you know, talks amongst leadership and tribal attorneys in terms of how can we address things internally, but ultimately we've always had to come back before the court to resolve issues of UNA. It's just the nature of what's being sought and the significance of the relief here. The stakes are substantial and I appreciate that. Thank you, Your Honor. I would like to just finish with one statement because it's fairly important and it gives you some of the context of what you're referring to, Your Honor. It's the Elder Testimony of Respected Tribal Elder Ms. Dover from 1975, Exhibit UT 17, page 14, lines 8 through 17. She stated, We wouldn't dream of going up, like you know, to Sailor Guamish River. That belongs to those people. And would they come down to your place? They come to visit. But did they come to roam about and live and hunt and fish and gather berries in your areas? You mean which? Any of the tribes? No. They didn't have to. They had riches galore. Stiller Guamish did not fish in the waters at issue at and before treaty time in a usual and a custom way because they had riches galore in the Stiller Guamish River Basin. Judge Martinez got it right. This panel should affirm the district court's amended order under the clear air standard. Thank you, Your Honors. All right. Thank you. And the counsel has said you have five minutes for your rebuttal. Thank you, Your Honors. I appreciate the time. Do you mind phrasing that a little bit? Thank you. How's that? Is that better? It's easier to hear you. Thanks. Your Honors, let's start with the language of the amended order. What I heard my colleagues say was that what Judge Martinez had a problem with was Dr. Friday's speculation or what the court determined was speculation, but that's not what the district court said. I'm on page 10 of the amended order, and Judge Martinez states, Critically for this order, all of Stiller Guamish's testimony and exhibits are speculative as to the question of fishing in the claimed waters. That statement is erroneous because that means what we're talking about. I believe there are over 340 exhibits that were admitted at trial. So what Judge Martinez is saying there is that prior testimony, which the prior panel of this court recognized that experts are allowed to build off the work of others that came before it, so that the reports of Dr. Lane that were previously admitted, the testimony of Dr. Lane previously admitted, the testimony of Dr. Riley and others previously admitted, tribal elder testimony previously admitted, all of that is speculation? That's not right. Well, was any of that evidence of actual marine fishing as distinguished from, and maybe the quarrels with the word speculative, I understand that to mean requiring inferences. It must have happened because there is evidence of X, such as villages, proximity, indeed the next sentence. It says, for example, expert testimony was presented indicating a prior expert witness felt that fishing must have happened, and must is in italics, must have happened because of proximity. He is acknowledging that. He's drawing a distinction between the inferential conclusion that fishing must have happened and actual evidence of fishing. Now, this evidence you're referring to, was any of it the actual evidence of fishing that the district court concluded was missing? Yes. What was that? But let me also say first that actual fishing evidence has never been the standard in this case. But was there proof of actual fishing? Well, that's a whole other issue, but okay. But was there proof of actual fishing? So, yes, right? I read you two examples previously, right? That was Dr. Snyder's testimony that Port Susan was fished by Stilaguamish. Dr. Riley, who said that Stilaguamish, who did hunt upriver, no one denies that they had upriver villages, came down to Port Susan to clam and fish. That's evidence of actual fishing. In another location that we haven't talked about, Holmes Harbor, there was a field note from an anthropologist which described a Stilaguamish man, whose name was Mowat Sam, actually fishing in those waters at treaty times. So those are just some of the examples where there was evidence in the record that the district court said was speculative that shows that there were Stilaguamish people fishing in the claimed waters. I think the other point to make here is that, and it's a point that the Amicus-Skalaam tribes made really well, and it dovetails off of what Mr. Hawkins just said, and that is it just defies logic to have tribes with villages on the salt water to not also find that the tribal members living in those villages would have used those waters. The district court has previously acknowledged, I think it was Finding a Fact 367, the district court said, of course, at treaty times, when tribal people went out for fresh food, they used the waters in closest proximity to their villages. And again, the evidence before the district court showed that there was village and presence evidence for Port Susan, Skagit Bay, and along the shores of Kamaino Island. So all of those inferences can be drawn based on the body of law in this case that says that those Stilaguamish people would have used those resources. What Upper Skagit tries to do is other Stilaguamish, saying that Stilaguamish alone would have stayed up on their river and would not have used these salt water resources. But that simply does not reflect the reality of 1855 or the reality of the law of the case and how the district court has judiciously reviewed what is, in its own words, right, evidence that is fragmentary and happenstance to find that tribes have usual and accustomed fishing areas. We do ask this court to review the record de novo. There are mixed questions of law and fact. Law questions predominate and find that Stilaguamish did fish the claimed waters at and before treaty times. Thank you, Your Honors. We thank counsel for their arguments. The case just argued is submitted.
judges: GRABER, CLIFTON, BENNETT